Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The employee-employer relationship existed at the time of the incident.
2. The Insurance Company of the State of Pennsylvania was the carrier on the risk at the time of the incident.
3. Plaintiff-employee sustained a compensable low back injury on 22 August 1995.
4. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged incident, defendant-employer employed the requisite number of employees to be bound under the provisions of said Act.
5. The average weekly wage of plaintiff at the time of the alleged injury was $348.00, yielding a weekly compensation rate of $232.01.
6. The parties agree that temporary disability benefits have been paid as follows:
From 24 August 1995 thru 21 April 1997
From 6 May 1997 and continuing.
7. The parties agree that they mediated the case on 25 May 1999 and that, pursuant to Commission Order, defendants paid the entire mediator's fee of $712.50, thereby advancing plaintiff's share of $356.25 against any award that plaintiff may received. A Pre-Trial Agreement dated 12 August 1999, was submitted by the parties and is incorporated by reference. The documents attached to the Pre-Trial Agreement were stipulated into evidence. In addition, the parties stipulated into evidence additional medical reports which were submitted on 29 February 2000.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, age forty-six at the time of the evidentiary hearing, is a high school graduate who began working for defendant-employer in 1988. In 1993, she was transferred to the Wal-Mart Store in Morehead City, where she worked as the manager of the pet department. Plaintiff's job duties included ordering and stocking merchandise.
2. On 22 August 1995, plaintiff sustained a compensable injury by accident when she injured her low back while reaching up to put merchandise on a top shelf. Her low back and leg pain became progressively worse and on 24 August 1995 plaintiff saw C.C. Goodno, M.D., for symptoms of an apparent lumbar radiculopathy. Dr. Goodno referred plaintiff to Harold M. Vandersea, M.D., an orthopedic surgeon, who treated her conservatively because there was no definite evidence of a ruptured disc on her MRI.
3. When plaintiff's symptoms persisted, Dr. Vandersea referred her to Mark C. Held, M.D., a neurosurgeon. Dr. Held examined plaintiff on 30 November 1995 and recommended that she undergo a mylogram. Plaintiff underwent the test, but the dye injection was not optimum, and Dr. Held also wanted her to have an EMG. The EMG was apparently not performed. Dr. Held then discussed surgery as a treatment option. On 22 January 1996, plaintiff saw Kenneth J. Rich, M.D., for a second opinion and he concurred with the recommendation for surgery, but he thought that there were two levels which warranted investigation.
4. On 20 February 1996, Dr. Held performed surgery to decompress the three levels between L3 and S1. Following the operation, plaintiff reported sufficient improvement of her symptoms. By 26 March 1996, plaintiff was able to walk two miles, although she indicated that she still had some pain in the sacroiliac and left buttock region. On 6 June 1996, plaintiff returned to work as a fitting room attendant on a part-time basis. The attendant position involved counting garments for customers who were trying on clothes, answering the telephone, and setting up boxes for the lingerie department. She could sit or stand and could move around while performing this job. After working in this capacity for a week, plaintiff called Dr. Held's office to report significantly increased pain. Consequently, Dr. Held took her out of work. He next saw her on 25 July 1996 and ordered a work hardening program, which she completed by her next office visit on 17 September 1996. Dr. Held then released plaintiff to return to work with restrictions.
5. Plaintiff returned to work in October as the fitting room attendant. On 7 October 1996, she was evaluated by Christopher S. Delaney, M.D., a physiatrist, on referral from Dr. Held. Dr. Delaney noted that her reflexes were decreased bilaterally, that there were inconsistencies in the interview, and that there were other inconsistencies on examination which indicated non-organic findings. Consequently, Dr. Delaney did not recommend further physical therapy but advised that plaintiff have a functional capacity evaluation. The functional capacity evaluation was performed on 11 November 1996, and the physical therapist noted self-limiting and inconsistent behaviors as well. Even with those findings, plaintiff was found capable of performing sedentary work, including the fitting room position, and it was recommended that her hours be gradually increased until she was working full time.
6. On 10 December 1996, plaintiff called Dr. Held's office and said that she did not think that she could work due to continuing back pain which would increase after working. At some point, Dr. Held issued a return to work note limiting her to working four hours per day on Monday, Wednesday, and Friday. When plaintiff saw Dr. Held on 16 January 1997, she reported being more comfortable on that schedule. Dr. Held opined that plaintiff had reached maximum medical improvement on 16 January 1997.
7. Plaintiff continued working as the fitting room attendant until approximately May 1997. At that time, defendant-employer voluntarily moved plaintiff to a job in the office because of her complaints of pain associated with the fitting room position. On 20 May 1997, plaintiff saw Irl J. Wentz, M.D., for a second opinion. Dr. Wentz was of the impression that plaintiff had chronic lumbar radiculitis, and he recommended that she be allowed to move around more, but otherwise continued her previous treatment with medication and exercises. Plaintiff returned to Dr. Wentz in June with complaints of chronic back pain, so he advised that she be evaluated for pain management.
8. Defendants sent plaintiff back to Dr. Delaney, who examined her on 15 July 1997. There were so many non-physiologic indicators of pain on his examination that he concluded that plaintiff was significantly exaggerating her symptoms. Dr. Delaney advised that she was able to work on a full-time basis and that she had reached maximum medical improvement.
9. Plaintiff had work absences in June and July, and stopped reporting for work altogether in August, even though she did not have a doctor's excuse for her absences. On 9 September 1997, plaintiff returned to Dr. Held with complaints of back spasms. Dr. Held prescribed medication for plaintiff and referred her to a anesthesiologist for epidural steroid injections. In November 1997, Dr. Held ordered an MRI which revealed fairly extensive epidural scarring of L4-5. Plaintiff was then referred to George M. Baylor, M.D., for nerve root blocks. On 17 December 1997, Dr. Baylor injected L5 with no reported relief. On 2 February 1998, Dr. Baylor injected L4 and plaintiff reported significant relief for several days. A second block at L4 on 24 February 1998, also reportedly gave plaintiff relief. At that time, Dr. Baylor suggested a trial of a spinal cord stimulator.
10. Defendants sent plaintiff to Dr. Delaney for another evaluation regarding the spinal cord stimulator treatment recommended by Dr. Baylor. Dr. Delaney examined plaintiff on 16 March 1998, and he found no significant change in her condition. There was objective evidence of neurologic loss from the disc herniation, but there was also obvious symptom exaggeration. In view of the striking non-psychological findings, Dr. Delaney did not recommend further diagnostic or therapeutic intervention since there was such a low likelihood of success. He recommended a comprehensive pain program which would address plaintiff's behavioral issues.
11. Dr. Held also referred plaintiff for pain management in March 1998 since she did not have a surgically correctable problem. The work restrictions that Dr. Held had previously given plaintiff were not changed.
12. Plaintiff has contended that she has been totally disabled since she stopped working in August 1997. However, none of her treating physicians have found her to be totally disabled. Rather, plaintiff has been given work restrictions and her work hours have been limited due to her complaints of pain. The fitting room attendant position provided by defendant was suitable to her capacity and was an actual job within the store that was available on a full-time or part-time basis. Plaintiff has been capable of performing that job throughout the time in question.
13. Both Dr. Delaney and the physical therapist, who performed the functional capacity evaluation in November 1996, found signs of significant symptom magnification. Furthermore, on 5 February 1998 and 6 February 1998, plaintiff was observed engaging in activities which were quite inconsistent with her reported symptoms. A surveillance videotape shows plaintiff engaged in labor intensive activities, including digging, pulling, climbing, bending, lifting, and stooping. Plaintiff was in no obvious discomfort during and after these activities. Plaintiff explained her activities by stating that she had recently received a nerve root block, which had helped her considerably. However, the level of activity which plaintiff performed undermines the credibility of her complaints of pain so significant that she cannot return to suitable employment. Plaintiff's explanations to the contrary are not credible.
14. Plaintiff reached maximum medical improvement with respect to her injury by accident on 15 July 1997. Plaintiff sustained a ten percent permanent partial impairment to her back due to the injury. Plaintiff's refusal to report for work after that date was unjustified since defendant had provided work to her which was suitable to her capacity. Plaintiff had no medical authorization to be out of work and had exaggerated her symptoms on examination to the extent that she misrepresented her condition to her physicians. Plaintiff's work restrictions were based upon her exaggerated symptoms. Plaintiff was capable of working on a full-time basis by the time she reached maximum medical improvement. Since defendant-employer had work available within her lifting restrictions, plaintiff was able to earn wages equivalent to her former average weekly wage.
15. Defendants admitted liability for benefits under the Act for plaintiff's 22 August 1995 injury pursuant to a Form 60 Employer's Admission of Employee's Right to Compensation submitted to the Commission. Defendants paid compensation to plaintiff from 24 August 1995 to the date of hearing before the Deputy Commissioner, as stipulated to by the parties. However, the rate of temporary partial disability payments and her actual earnings while working at light-duty were not disclosed by the evidence.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. When plaintiff reached maximum medical improvement on 15 July 1997, she was capable of earning wages equivalent to her pre-injury earnings. G.S. §§ 97-29, 97-30.
2. Although plaintiff would be entitled to compensation at the rate of $232.01 per week for thirty weeks beginning 16 July 1997 for the ten percent permanent partial disability she sustained to her back as a result of the injury giving rise to this claim, defendants have overpaid compensation to her and are entitled to a credit or offset in the amount of compensation paid since 15 July 1997. G.S. §§ 97-31(23), 97-42.
3. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiff's period of disability. G.S. §§ 97-25,97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff was entitled to compensation at the rate of $232.01 per week for thirty weeks beginning 16 July 1997 for her permanent partial disability, but defendants have paid compensation to her well in excess of that amount and are entitled to a credit or offset for the compensation they have paid. Defendants are also entitled to a credit or offset for their overpayment as against any future compensation which may become due to plaintiff by reason of this claim.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability, subject to the limitation of G.S. § 97-25.1.
3. Each side shall pay its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
RCR:db